UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUPPLEMENT MANUFACTURING PARTNER
*doing business as*
SMP NUTRA,

            *Plaintiff*,

    -against-

GLOBAL WIDGET,

           *Defendant*.
-------------------------------------------------------------X

**ORDER**
24-cv-05596 (SJB) (JMW)

**A P P E A R A N C E S:**

    Anna Iskikian
    Jane Jihyun Jaang
    Nicole Haff
    Shuyu Wang
    Brett Evan Lewis
    **Lewis & Lin LLC**
    77 Sands St, Suite Fl 6
    Brooklyn, NY 11201
    *Attorneys for Plaintiff*

    Stanford R. Solomon
    Trenton Leigh
    **The Solomon Tropp Law Group, P.A.**
    1881 West Kennedy Boulevard
    Tampa, FL 33606

    Kenneth Charles Murphy
    **Rivkin Radler LLP**
    926 RXR Plaza
    Uniondale, NY 10176
    *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

Plaintiff Supplement Manufacturing Partner ("Plaintiff" or "SMP") commenced this action seeking injunctive and monetary relief against Defendant Global Widget ("Defendant" or "Global Widget") alleging that Defendant distributed proprietary information to business competitors in breach of the parties' Vendor Agreement ("Agreement"). (*See generally* ECF No. 1.) The parties are before the Court on Plaintiff's motion to compel Defendant to respond to outstanding discovery with respect to (1) supplementing Defendant's responses to Interrogatory 15 and Requests for Production ("RFP") Nos. 1, 3, 5, 27-28, and 30-35. (ECF No. 63.) For the following reasons, Plaintiff's motion (ECF No. 63) is **GRANTED** in part and **DENIED** in part.

## FACTUAL BACKGROUND

Plaintiff, a contract supplement manufacturer operating in the supplement or nutraceutical industry, commenced the underlying action on August 9, 2024 against Defendant for the alleged breach of various sections of the parties' Vendor Agreement. (*See* ECF No. 1 at ¶¶ 1, 11.) The Agreement permitted Global Widget to manufacture, package and supply certain products to SMP in exchange for SMP providing Global Widget with proprietary information about SMP's customers so that Global Widget could supply products according to a customer's particular specifications. (*Id.* at ¶ 2.) SMP considers its customer list to be highly proprietary and confidential such that it only discloses "limited customer-related information on a need-to-know basis only" to a vendor like Global Widget. (*Id.* at ¶ 16.) Given the proprietary nature of SMP's customer lists, the Agreement included provisions that any information regarding SMP's customers given to Global Widget to carry out the Agreement could not in turn be used by Global Widget to compete with SMP unfairly. (*Id.* at ¶ 3.)

The Agreement included a Proprietary Information section (Section 8) providing that information such as customer or vendor names, addresses, phone numbers, and orders were shared to enable Global Widget to perform its end of the Agreement, on the condition that "Vendor [Global Widget] shall not, directly, or indirectly, misappropriate, use, make available, sell, convey, license, or disclose Proprietary Information, except as expressly permitted by this Agreement, or otherwise communicate any Proprietary Information to any Person." (*Id.* at ¶ 18.) Further, the "No Competition" section (Section 9) provided that from the date of the Agreement's formation until two years from the date the Vendor no longer manufactures products for SMP, "Vendor [Global Widget] may not directly or indirectly (other than for the benefit of, and at the direction of, SMP or any affiliate of SMP ("Affiliate")) do or attempt to do business with or solicit orders from any Person or entity that is known to be a Customer or prospective Customer of SMP, nationwide, or otherwise divert or attempt to divert known Customers or prospective Customers for Vendor's [Global Widget] or a third party's benefit, with respect to any Product previously, now, or any time hereafter sold or otherwise offered by SMP or any Affiliate thereof." (*Id.* at ¶ 20.)

To ensure these provisions were adhered to, Global Widget agreed, in Section 11 of the Agreement, to "make available to SMP, at SMP's request, the books, and records of Vendor [Global Widget] for all sales relating to Customers of SMP subject to Vendor's confidentiality and security requirements and only during the Term of this Agreement." (*Id.* at ¶ 21.) Likewise, the parties agreed that any breach of Sections 8 and 9 would not only allow SMP to terminate the Agreement but that such a breach would warrant equitable relief and/or substantial monetary damages. (*Id.* at ¶ 23.) Furthermore, a breach of Section 9 "would entitle SMP to the exclusive remedy of triple the profit from any sales made in violation of Section 9." (*Id.* at ¶ 25.)

SMP alleged that Global Widget breached these provisions by entering into separate negotiations with a customer of SMP—Jarrow Formulas, Inc, and Natrol LLC, who collectively do business as Vytalogy ("Vytalogy"). (*Id.* at ¶¶ 4, 26.) SMP maintains that Global Widget used the documents and information necessary to supply products to Vytalogy to circumvent SMP. (*Id.* at ¶ 26.) Upon learning of the apparent breach of Section 9, SMP gave Global Widget the opportunity to cure the purported misuse of Proprietary Information, but notified Global Widget that it was prepared to seek relief if such activity persisted. (*Id.* at ¶ 27.) SMP eventually sought to invoke the Section 11 of the Agreement to inspect the books and records of Global Widget for all sales involving this particular customer to determine the extent of the alleged Section 9 breach.[1] (*Id.* at ¶ 29.) Plaintiff also maintains that Global Widget further breached the Agreement by refusing to fulfill a purchase order submitted by SMP which Global Widget claims was "put on hold/cancelled" until the issue regarding Vytalogy is "resolved." (*Id.* at ¶ 31.)

## PROCEDURAL HISTORY

On December 16, 2024, the parties appeared before the undersigned for an Initial Conference and a discovery scheduling order was entered providing that, *inter alia*, the completion of fact discovery be May 5, 2025 and the close of all discovery be August 1, 2025. (ECF No. 36; ECF No. 37 at p. 3.) The completion of fact discovery was extended to August 1, 2025 (Electronic Order dated March 31, 2025) and the close of all discovery, including experts, extended to October 20, 2025. (Electronic Order dated June 4, 2025.)

Now on the heels of the fact discovery deadline, Plaintiff filed the instant motion seeking an order compelling production of outstanding discovery requests aimed at addressing

---

[1] As of the date of filing the Complaint, Plaintiff maintains that Global Widget failed to permit such an inspection. (ECF No. 1 at ¶ 30.)

4

"Defendant's principal defense in this case—that the Liquidated Damages Provision in the parties' contract is 'facially penal,' 'stillborn,' and 'unenforceable as a matter of law.'" (ECF No. 63 at pp. 1-2 (citing ECF Nos. 24, 25, 50, 55-57.)) Namely, Plaintiff notes that (i) Defendant continues to object to certain information outright, specifically Interrogatory 15 and RFP's 27-28 and 33-35 (*see id.* at p. 1), and (ii) Defendant has been "slow-walking" in production as to other requests, specifically with respect to RFP's 1, 3, 5 and 30-32. (*Id.* at p. 2.) Plaintiff's understanding is that Defendant does not object to producing this information, but rather Defendant has "repeatedly moved the dates by which it will actually produce the documents." (*Id.*)

Conversely, Defendant maintains that because it "has continued to produce responsive documents, and the parties have significantly narrowed the remaining outstanding issues," specifically with respect to RFP's 30 and 31,[2] the "only disputed discovery responses" are Defendant's responses to RFP's 3, 27, 28, and 32-35, and Interrogatory #15. (ECF No. 66 at pp. 1-2.) As for these remaining requests, Defendant argues that it has "more than adequately responded to each one of SMP's legitimate discovery requests" and that the continued demand is "nothing more than a continuation of SMP's abusive and harassment application of the Liquidated Damages Provision . . . .". (*Id.* at p. 5.)

## DISCUSSION

"Motions to compel are left to the court's sound discretion." *Bartlett v. DeJoy*, No. 22-CV-03398 (GRB)(JMW), 2023 WL 3306963, at *1 (E.D.N.Y. May 7, 2023) (citing *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010)

---

[2] Defendant posits that it expects its rolling production of responses to RFP's 30 and 31 to be completed by August 1, 2025. (ECF No. 66 at p. 2, n.1.)

5

("[A] motion to compel is entrusted to the sound discretion of the district court.")). "Rule 26 of the Federal Rules of Civil Procedure, as amended in 2015, provides that a party is entitled to discovery on 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Under the amended rules, '[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" *Goss v. E.S.I. Cases & Accessories, Inc.*, No. 18-CV-2159 (GBD)(JLC), 2019 WL 3416856, at *2 (S.D.N.Y. July 30, 2019) (quoting *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016)).

It is under this framework that the Court considers each of Plaintiff's requests.

### A. Requests for Production Nos. 1 and 5

RFP No. 1 requests that Defendant:

Produce all invoices, purchase orders or Contracts exchanged or entered between Global Widget and Vytalogy.

(ECF No. 63-9 at p. 7.)

Similarly, RFP No. 5 requests that Defendant:

Produce all documents and communications that demonstrate payments received by [Defendant] from Vytalogy, including wire transfers, check payments, and any other proof of payment to [Defendant] from Vytalogy.

(*Id.*)

Shortly after Plaintiff filed its motion to compel, Defendant provided supplemental responses to RFP Nos. 1 and 5 which Plaintiff was "satisfied with." (*See* ECF No. 66-1 (email

6

from Plaintiff's counsel to counsel for Defendant noting "[w]e have reviewed Global Widget's supplemental production dated July 1 and we are satisfied with Global Widget's responses to SMP Nutra's RFP's 1 & 5.")). As such, that branch of Plaintiff's motion is denied as moot. *See Jones v. Reinbolt*, No. 19-CV-6672CJS, 2022 WL 2974035, at *1 (W.D.N.Y. July 27, 2022) ("Because the discovery sought to be compelled has been provided, the motion to compel is denied as moot.").

### B. Requests for Production Nos. 30-31

RFP No. 30 demands that Defendant:

> Produce all purchase orders [Defendant] submitted for all materials and components that [Defendant] subsequently incorporated into produces [Defendant] sold to Vytalogy.

(ECF No. 63-10 at p. 7.)

RFP No. 31 demands that Defendant:

> Produce all invoices [Defendant] received for all materials and components that [Defendant] subsequently incorporated into products [Defendant] sold to Vytalogy.

(*Id.*)

Defendant maintains that it has "committed to a rolling production of documents responsive to RFP ## 30 & 31" and will continue doing so "one a weekly basis, each Friday until production is completed." (ECF No. 66 at p. 1; ECF No. 66-2.) Defendant anticipates this responsive production to be completed August 1, 2025. (*See* ECF No. 66-2.) Accordingly, should Plaintiff deem Defendant's responses to these RFP's deficient upon completion of production, it should make the proper application to the Court at that juncture. Until then, this part of Plaintiff's motion to compel is denied without prejudice and with leave to renew.

### C. Request For Production Nos. 3 and 32

RFP No. 3 seeks to have Defendant:

Produce all accounting, financial or bookkeeping documents showing the gross sales Global Widget made to Vytalogy from October 1, 2022, through the conclusion of fiscal year for 2024. This request includes, by way of example and not limitation, sales reports, profit and loss statements, balance sheets, ledgers, accounting records, and financial statements.

(ECF No. 63-9 at p. 7.)

Similarly, RFP No. 32 seeks to have Defendant:

Produce all accounting, financial or bookkeeping documents showing the gross sales Global Widget made to Vytalogy from October 1, 2022 through the present, and the net profits from such sales. This request includes, by way of example and not limitation, sales reports, expense reports, profit and loss statements, balance sheets, ledgers, accounting records, and financial statements.

(ECF No. 63-10 at p. 7.)

Plaintiff contends that Defendant's productions relevant to these RFP's have been only partially responsive (*i.e.,* Defendant has only produced a "snippet of the transactions between Defendant and Vytalogy" and "failed to produce any of the specific documents identified in this discovery request"), and thus insufficient. (*See* ECF No. 63-1 at p. 2; ECF No. 63-3 at p. 2.) Further, Plaintiff does not find credible Global Widget's representation that it does not have such records because the ordinary course of business and Global Widget's reference to QuickBooks in email communications reflect differently. (*See id*.)

On the other hand, Defendant asserts that it produced to Plaintiff "accounting and other gross sales records demonstrating Global Widget's gross sales up through and including April 24, 2025." (ECF No. 66 at p. 2.) Defendant maintains that it does not have "standalone records" showing gross sales made only to Vytalogy, but rather possesses "general accounting, financial and bookkeeping records for the entirety of its operation." (ECF No. 63-4 at p. 2.) Moreover,

8

Defendant avers that information relating to the 2025 Vytalogy sales invoices that Defendant produced to Plaintiff is contained on "spreadsheet GW_039128" that Plaintiff acknowledged receipt of. (*See* ECF No. 66 at p. 2.) Accordingly, Defendant posits that it "is not required to create records that do not already exist." (ECF No. 63-2 at p. 2.)

Here, the documents sought are relevant especially as to the calculation of potential damages. The Liquidated Damages provision of the Vendor Agreement states, "if Vendor breaches Section 9 hereof, the breach will entitle [Plaintiff] to the exclusive remedy of *triple the profit from any sales* made in violation of Section 9." (ECF No. 1 at ¶ 42) (emphasis added). With respect to Section 8 of the Vendor Agreement, the Liquidated Damages provision provides that for breaches of Section 8 of the Agreement, "[Plaintiff] shall also be entitled to the exclusive remedy of *triple the profits of Vendor [Global Widget] earned from*, or triple [Plaintiff's] losses from (whichever is greater), *the use or disclosure of [Plaintiff's] Proprietary Information*, as a fair and reasonable projection of [Plaintiff's] future damages." (*Id.*) (emphasis added).

To accurately calculate the liquidated damages owed, understanding the sales numbers and corresponding earnings generated from the dealings between Vytalogy and Global Widget are necessary, relevant and proportional. The requests are limited to sales between Defendant and Vytalogy—the basis for a liquidated damages award. *Compare Armamburu v. Healthcare Fin. Servs., Inc.,* No. 02 Civ. 6535, 2007 WL 2020181, at *3 (E.D.N.Y. July 6, 2007) (ordering defendant to produce canceled checks, bank statements, tax returns, applications for credit and information regarding shareholder compensation, net worth, and transfer of assets because this "financial information sought by plaintiff is relevant in calculating damages in this case, which are based on defendant's net worth").

Accordingly, that branch of Plaintiff's motion is granted and Defendant is directed to comply with the specific requests made in both RFP Nos. 3 and 32. To the extent that Defendant does not possess the requested documents, Defendant shall serve upon Plaintiff a so-called *Jackson* Affidavit[3] detailing: (i) that a thorough search has been conducted where the documents would likely reside, (ii) the results of the search, and (iii) an explanation of where and how the documents would have been maintained.

### D. Interrogatory No. 15, Request for Production Nos. 27 and 28

Interrogatory No. 15 requests Defendant to:

> Identify and describe Your dealings with any Third Parties to any agreement that is substantially similar to the Vendor agreement or that otherwise provides to any degree for Your manufacture of nutraceutical or vitamin products, before entering into the Vendor Agreement or thereafter, including, without limitation, all such agreements containing a liquidated damages provision.

(ECF No. 63-6 at p. 5.)

Similarly, RFP No. 27 reads:

> Produce all agreements between Defendant and any Third Party that are substantially similar to the Vendor Agreement or that otherwise provide to any degree for Defendant's purchase of any components necessary for Defendant's manufacture or packaging of nutraceutical and vitamin products, before Defendant's entry into the Vendor Agreement or thereafter, including, without limitation, all such agreements containing a liquidated damages provision.

(ECF No. 63-7 at p. 7.)

Additionally, RFP No. 28 reads:

> Produce all agreements between Yourself and any Third Party that are substantially similar to the Vendor Agreement or that otherwise provide to any degree for Your purchase of any components necessary for Your manufacture or packaging of nutraceutical and vitamin products, before Your entry into the Vendor Agreement or thereafter, including, without limitation, all such agreements containing a liquidated damages provision.

---

[3] A "*Jackson* affidavit" refers to an affidavit or declaration filed by a party that claims that the documents sought do not exist. The affidavit derives its name from a New York State case *Jackson v. City of New York*, 586 N.Y.S.2d 952 (App. Div. 1st Dep't 1992).

10

(*Id.*)

Plaintiff avers that evidence relating to whether it has agreed to similar provisions in the past is relevant because it relates to "the attendant circumstances" regarding the enforceability of the Liquidated Damages Provision. (ECF No. 63 at p. 4.) Plaintiff asserts that these discovery requests are necessary for it to have "complete information regarding how profits, payments, costs and expenses were allocated to reach the profit calculations reflected in some of the documents Defendant has produced." (ECF No. 63 at pp. 4-5.) Plaintiff maintains that Defendant's response that it "has had no dealings with any third parties to any agreement substantially similar to the Vendor Agreement" is non-responsive, evasive and deficient and requires supplementation or other correction. (ECF No. 63-3 p. 1.) Further, according to Plaintiff, the word "or" in the Interrogatory and RFP means that even if there are no similar agreements, Defendant is still obligated to comply with the other portion of these discovery devices because "the sole reasonable interpretation attaching to these discovery requests is that 'or' is to be construed in the disjunctive." (*See id.*; *see also* ECF No. 63-3 at p. 3.)

Defendant rebuts that Global Widget has responded completely to the discovery requests regarding "substantially similar third-party agreements" and urged Plaintiff to issue additional discovery requests if seeking information or documents on "some other matter." (ECF No. 63-2 p. 4.) Defendant further asserts that it "is not a party to any other agreements substantially similar to the Vendor Agreement," namely because "[t]he Vendor agreement and the relationship between Global Widget and SMP is a unique one-off." (ECF No. 66 pp. 2-3.) Defendant continues that the "or" "cannot have been intended to be disjunctive" and that SMP's reading is unreasonable as it would render the first category of agreements subsumed by the second category of agreements. (ECF No. 63-2 at p. 3; *see* ECF No. 63-3 at p. 3.) Additionally,

11

Defendant argues that it "objects to producing any documentation or information related to Global Widget's contracts or agreements with third parties" as irrelevant and disproportionate to the needs of this case. (ECF No. 63-4 at p. 3.)

Here, the first part of Interrogatory No. 15 and RFP's 27 and 28 seeking agreements and dealings substantially similar to the Vendor Agreement is relevant and proportional to the needs of this case because the interpretations and existence of other similar agreements sheds light on the application of similar terms within the Vendor Agreement, like the Liquidated Damages provision that Defendant argues is unenforceable as a penalty and was void at the time the parties entered into the Vendor Agreement. (*See* ECF No. 33 at ¶¶ 45, 46) (Defendant's Affirmative Defenses pertaining to the Liquidated Damages clause)); *see also Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 24 (D. Conn. 2008) (granting a motion to compel after determining requests for production and interrogatories requesting information regarding "the drafting and enforcement history of provisions . . . in both the parties' agreement and similar agreements entered into by the plaintiff" was relevant to how terms were used in other agreements). To the extent that Defendant maintains that there are no other agreements substantially similar to the Vendor Agreement given its "unique" circumstances, Defendant is direct to produce a *Jackson* Affidavit, *see supra*, to that effect.

As it pertains to the remaining clause in Interrogatory 15 and RFP's 27 and 28, the term "or" is a disjunctive connector tying the first phrase about producing agreements between Defendant and third parties to the remainder of the sentence relating to the content of those agreements irrespective of whether those agreements were substantially similar to the Vendor Agreement. *See Signify N. Am. Corp. v. Satco Prods. Inc.*, No. 19-CV-6125 (JMA) (SIL), 2020 WL 9455192, at *2 (E.D.N.Y. Oct. 22, 2020) (concluding the term "or" in the Federal Rules

governing discovery "is written in the disjunctive"); *see also Gordon v. City of New York*, No. 14 Civ. 6115 (JPO) (JCF), 2016 WL 3866585, at *3 (S.D.N.Y. July 13, 2016).

Further, prior dealings and agreements between Defendant and third parties involving manufacturing or packaging of nutraceutical and vitamin products, including those with liquidated damages provisions, are proportional because the requests seek agreements and information within a confined scope and timeframe, and are extremely relevant to the current action—one brought by a contract supplement manufacturer that provides services to its clients in the supplement or nutraceutical industry against Defendant for breach of an agreement underlying the purchase and sale of nutraceutical products to Defendant. (*See* ECF No. 1 at ¶¶ 12-15.); *see also Sedona Corp.*, 249 F.R.D. at 24. Accordingly, this branch of Plaintiff's motion is granted and Defendant is directed to comply with the entirety of Interrogatory No. 15 and RFP's Nos. 27 and 28.

E. **Request For Production Nos. 33 – 35**[4]

RFP No. 33 requests from Defendant:

> Any internally prepared financial statements, including but not limited to profit and loss statements reflecting all revenue received, expenses incurred and profits and/or losses generated as well as balance sheets demonstrating all assets, liabilities and owners' equity

(ECF No. 63-8 p. 7.)

Likewise, RFP No. 34 seeks:

> Any accountant-prepared financial statements, including but not limited to profit and loss statements demonstrating all revenue received, expenses incurred and profits and/or losses generated; balance sheets demonstrating all assets, liabilities

---

[4] Plaintiff notes in its email correspondence dated July 2, 2025 that "[i]n the interest of narrowing the issues further and reaching a resolution with respect to as many discovery requests as we can, we would like to reiterate our officer to consider withdrawing SMP Nutra's motion to compel Global Widget's general financials (FRPs 33-35)" provided Defendant provided a number of spreadsheets and supplemental information from prior spreadsheets. (ECF No. 66-1 at p. 1.)

13

and owners' equity; statement(s) of cash flows; accompanying footnotes, disclosures for and/or supplements to the foregoing financial statements; tax return schedules substantiating claimed revenue, profits and/or losses.

(*Id.*)

Similarly, RFP No. 35 seeks:

General ledgers or other books of original entry used to prepare any internal and/or accountant- prepared financial statements and/or income tax returns.

(*Id.*)

Plaintiff asserts the requested information is within the scope of discovery because Defendant's principal defense, that the Provision is "facially penal", "stillborn," and "unenforceable as a matter of law" (*see* ECF 24, 45, 50, 55-57), makes the requested information necessary and reasonable. (*See* ECF No. 63 pp. 2-3 ("Because Defendant maintains that the Provision is 'facially penal,' it is obligated to disclose financial records that would demonstrate and/or counter that claim.")). Plaintiff further posits that it needs complete information regarding how costs, expenses, payments, and profits were allocated to obtain the necessary profit calculations. (*See id.* at pp. 4-5.)

Conversely, Defendant asserts that this information is not discoverable at this stage of the proceeding because Plaintiff has not alleged facts sufficient to make a claim for punitive damages notwithstanding Plaintiff's claim for treble damages. (ECF No. 66 at p. 3.) Similarly, Defendant contends that Plaintiff has not demonstrated why "the entire universe of Global Widget's finances" have any relation to the Liquidated Damages provision in the Vendor Agreement. (*Id.* at p. 4.) Therefore, SMP's profit inquiry must and can only be limited to sales between Global Widget and Vytalogy, which, according to Defendant, it has already produced. (ECF No. 66-5 at p. 2 ("Global Widget has produced to SMP Nutra records demonstrating Global Widget's gross sales and Global Widget's costs incurred toward manufacturing the

14

products sold to Vytalogy."")) Indeed, as Defendant argues, "SMP is not entitled to pre-disclosure of Global Widget's entire finances merely because the parties agreed to a Liquidated Damages Provision which attempts to use Global Widget's profits on a subset of its total sales as a base factor upon which to calculate liquidated damages." (ECF No. 66 at p. 4.)

Here, these requests are extremely overbroad. The underlying dispute relates to the alleged breach of the Vendor Agreement following Defendant's entry into a contractual relationship with Vytalogy on February 27, 2024. (*See* ECF No. 1 at ¶ 26). Plaintiff seeks to now enforce the provisions of the Vendor Agreement, including the Liquidated Damages provision, providing for damages stemming from the misappropriation of proprietary information which, in this case, involved two entities—Global Widget and Vytalogy. (*See id.* at ¶¶ 24, 27, 42.) Nonetheless, RFP Nos. 33-35 do not include, for example, a limitation as to *who* Defendant received revenue from, *what* period of balance sheets demonstrating assets and liabilities are being sought, or *from which* tax return period needs to be produced. Merely because Defendant raises an affirmative defense challenging the applicability and enforceability of the Liquidated Damages provision does not supply Plaintiff a blank check for overbroad discovery demands in contradiction of the Federal Rules' mandates. Accordingly, this branch of Plaintiff's motion is denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to compel (ECF No. 63) is **GRANTED** in part and **DENIED** in part as set forth above. The parties are directed to meet and confer and file a status report on ECF on or before **August 8, 2025** advising the Court as to remaining discovery and proposed final discovery deadlines.

Dated: Central Islip, New York
       July 30, 2025

**S O   O R D E R E D:**
/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge
